DJS:sr

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 00-6036-CR-FERGUSON

UNITED STATES OF AMERICA,  :

PLAINTIFF,  :

v.  :

TRACEY ANN NICOLA WALTERS,  :

DEFENDANT.  :



### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through the undersigned Assistant United States Attorney, files the following Sentencing Memorandum in this cause:

1. Defendant has filed a Sentencing Memorandum in this cause, urging the Court to grant an adjustment to the base offense level applicable to the defendant, who has entered a plea of guilty to importation of a mixture of cocaine (hydrochloride) into the United States from the country of Jamaica, in violation of Title 21, United States Code, Section 952. The alleged basis of such an adjustment is defendant's participation in the offense as either a minor or minimal participant. Defendant's request for adjustment based on so-called "minor" or "minimal" participation is unfounded in either law or fact, and is allegedly supported by an analysis of United States v. De Varona [sic], 175 F.3d 930 (11th Cir. 1999) (*en banc*), which is misleading to the Court.

2. In United States v. De Varon, 175 F.3d 930 (11th Cir. 1999) (*en banc*), the Eleventh



Circuit Court of Appeals rejected a prior panel's vacation of sentence and upheld the District Court's denial of a minor role adjustment to a courier who brought 512.4 grams of 85 percent pure heroin into the United States. The Eleventh Circuit noted that the district court must measure the defendant's role against her relevant conduct, that is , the conduct for which she has been held accountable under U.S.S.G. § 1B1.3, not against some larger criminal conspiracy. _Id._ at 943-944. By way of explanation, the Eleventh Circuit noted that a defendant is not automatically entitled to a minor role adjustment merely because she was somewhat less culpable than the other discernable participants; rather, the district must determine that the defendant was less culpable than most other participants in the relevant conduct. Thus, though comparative roles are important in determining whether to grant an offense level reduction, they are not determinative. _Id._ at 944.

3. This means that the district court must (1) measure the defendant's role against the relevant conduct for which she is held accountable at sentencing, i.e., the importation of 1401 grams of cocaine, and (2) measure the defendant's role against the other participants, to the extent they are discernable, in that relevant conduct. In the case at bar, the defendant, like the defendant in De Varon, played an important and essential role in her own relevant conduct, the importation of 1401 grams of high purity (here, 66 percent pure) cocaine. As in De Varon, the defendant here claims that she did not supply the controlled substance; this claim did not prevent the district court from concluding, or the Eleventh Circuit from affirming, _en banc_, the conclusion that the defendant's participation was central to the importation scheme. De Varon, at page 946. In De Varon, the Court of Appeals affirmed the district court's denial of a minor role reduction, while specifically noting that it was not a case in which a drug courier convicted of importation was given a minor role reduction even though the only drugs attributed to her for base offense level purposes were those that she personally brought into this country in or on her person and personal effects or luggage. Id. at

945, n. 8.

4. In this case the defendant was supposedly introduced by a long-time girlfriend to a Phillip Rankin, who offered to pay the defendant $2500.00 to transport half a kilogram of cocaine to the United States, but only after she returned to Jamaica. After reaching the United States, the defendant was to travel to her cousin's house for further instructions on distribution. Like the defendant in De Varon, the defendant in the case at bar had her own financial stake in the enterprise, apparently at least her airfare ( See Exhibits 1 and 2, attached and incorporated herein by reference), and some traveling funds (See Exhibit 3 attached and incorporated herein by reference). It should also be noted that the fair market value of the drugs conservatively ranged from over $23,000.00 to over $84,000.00, without regard to further dilution by "cutting" (See Exhibit 4, Affidavit of Special Agent Ed Flood, attached and incorporated herein by reference). While there could be some argument that the defendant's girlfriend who made the introduction was also involved, it seems clear that her involvement, not the defendant's, was minor or minimal, as her conduct was only ancillary to and preceded the relevant conduct of defendant in actually bringing the cocaine into the United States. Even the conduct of "Phillip Rankin" cannot be said to be superior to that of the defendant Walters, as the crime itself could not have been committed without the participation and continuing conduct (in taking the cocaine to her cousins's home) of the defendant. The successful importation required independent and continuing conduct and initiative by the defendant, who stood to gain nothing, not even traveling funds, unless she could return to Jamaica.

5.  A minor role is not supported by the facts before the Court, and a minimal role is both a factual and legal impossibility under these circumstances.

                Respectfully submitted,

                THOMAS E. SCOTT
                UNITED STATES ATTORNEY

By: _____

                DEBRA J. STUART
                ASSISTANT U.S. ATTORNEY
                FLA. BAR NO. A5500061
                500 E. Broward Blvd., 7th Floor
                Ft. Lauderdale, Fl 33394
                (954) 356-7255
                (954) 356-7336

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was hand delivered on this 22nd day of May, 2000, to Sam Smargon, Assistant Federal Public Defender, 101 N.E. 3rd Avenue, Ft. Lauderdale, Fl 33301.

_____
DEBRA J. STUART
ASSISTANT U.S. ATTORNEY



SALES PERSON: JW

TO: VM TRAVEL AND TOURS
33 CHURCH ST
MONTEGO BAY, JAMAICA

ITINERARY

FOR: WALTERS/TRACEY ANN MS                                    ONOXCR       DATE:
                                                                           PAGE: 01

31 JAN 00  -  MONDAY
    AIR    AIR JAMAICA LTD          FLT: JM89   FIRST CLASS
           LV MONTEGO BAY                       5:00P
           AR FT LAUDERDALE                     8:40P
           ARRIVE: TERMINAL 3
           VIA KINGSTON MAN()

07 FEB 00  -  MONDAY
    AIR    AIR JAMAICA LTD          FLT: JM54   STOP(0)M/
           LV MIAMI INTERNTNL                   8:45A
           AR MONTEGO BAY                       9:25A

JAMAICAN DEPARTURE TAX IS INCLUDED
ALLOW 2 HOURS FOR CHECK-IN ON INTERNATIONAL FLIGHTS.



Exhibit M-4

00010



**PASSENGER TICKET AND BAGGAGE CHECK** — AIR JAMAICA LTD

REP IN COUNTRY OF ORIGIN ONLY · IATA 31JAN00 · ABJMBJ AA/ONOXCR 417VM TRAVEL AND INT 76 MONTEGO BAY · JM 887113834

WALTERS/TRACEY ANN MS

| | | | | | | |
|---|---|---|---|---|---|---|
| X/O VOID | | VOID | VOID | | | |
| MONTEGO BAY | JM | 89F | 31JAN | 520P | OK FJXP5O | |
| O FT LAUDERDALE | | VOID | VOID | VOID | | |
| O MIAMI INTERNTNL | JM | 30A | 07FEB | 805A | OK KRQE30 | |
| MONTEGO BAY | | | | | | |

USD 367.00 MBJ JM FLL 06.00 217.00Y/MIA JM MBJ 06.00 138.00NUC367.00END
JMD 15514 · ROE1.00XT127XA1050US126XFMIA3
600JH
254XY
1303XTCXSH/BSR42.26
JMD 17671
00117
5300065280 1    4    201    3174002412 2

---

**APPLICATION FORM**

Mr. ( ) Ms. ( ) Dr. ( ) Other _____  
Home Phone: 934-7069  
Last Name: Walters  
Business Phone: 952-4988  
First Name: Tracey-Ann  
Occupation: Sales Clerk  
Middle Initial: Nicola  
Date of Birth: October 2, 1976  
Mailing Address: 5 River Bay Rd  
Travel Agency Name: V M Travel & Tours  
City: Montego Bay St. James  
Travel Agency Address/Location: 37 Church Street, Montego Bay  
State/Country: Jamaica  
Zip/Postal Code: West Indies  
Signature: Walters

**airJamaica** — Soaring to new heights

Exhibit - N-3



**TEMPORARY RECEIPT**

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons    No. 21588

FDC-Miami    2/11/00
(Place) SCS    (Date)

RECEIVED FROM

Cash ☒
M.O. ☐    for Two hundred and one 00/100 Dollars, $201.00
Check ☐    (Money orders and checks may be accepted subject to collection)
           To be deposited in the Inmate Deposit Fund and credited to the

Account of  WALTERS, Tracey-Ann    60271-004
            (Inmate's Name)    (Receipt No.)

If receipt is VOIDED, keep    (Signature of Receiving Officer) Mail Officer, Re-
original receipt in book.    ceiving and Discharge Officer, Visiting Officer, etc.

USP LVN    Previous editions not usable    BP-197(20)
                                            JANUARY 1990

00018

EXHIBIT
4

## AFFIDAVIT OF EDWIN FLOOD

Edwin Flood, being first duly sworn, deposes and states the following:

1. I am employed as a Special Agent with the United States Customs Service ("Customs"). United States Department of Treasury, Ft. Lauderdale, Florida, and have been so employed since November, 1986. Prior to that time, I was employed as a Special Agent with the Bureau of Alcohol, Tobacco and Firearms. I am presently assigned to RAIC/FL, HIDTA (High Intensity Drug Trafficking Area), Group-III, which is continuously involved in the investigation of drug trafficking and money laundering. I have received training and been assigned to conduct investigations of criminal violations of the United States Code as enumerated in Titles 18, 19, 21, 22, 31, and various other federal statutes.

2. As part of my duties, I have been involved in hundreds of drug trafficking cases involving cocaine and have served in many capacities as case agent or other investigative participant. In these capacities, I am familiar with procedures for importation and distribution of cocaine hydrochloride, and I am in continuing contact with other federal, as well as state and local, officers who participate in both "wholesale" and street-level negotiations and sales. Based upon my experience and training as a Customs agent, I know that the "wholesale" average price for a kilogram of cocaine hydrochloride in the Southern District of Florida is approximately between \$17,000.00-\$20,000.00, and that the average "wholesale" price for an ounce of cocaine hydrochloride in this same area is approximately between \$600.00-\$800.00. I also know that, nationally, a 66-percent purity of cocaine hydrochloride indicates close proximity to the source of the cocaine; usually, at the street level, such cocaine would be "cut" several times to increase its overall volume at least two or three times, and would be sold for up to \$60.00 per gram.

3. I have also read the Government's Sentencing Memorandum in the case of Tracey-Ann

Nicola Walters, Case Number 00-60360CR-FERGUSON, to which my Affidavit is attached. As the case agent in this case and as principal investigative agent, I am familiar with the facts of that case, and I personally participated in the questioning of the defendant following advice of rights at the time of her arrest. The facts regarding this case, as stated in the Government's Sentencing Memorandum, are true to the best of my knowledge.

4. This Affidavit is given and made under penalty of perjury, and for consideration by the Court in this cause, pursuant to Title 28, United States Code, Section 1746.

Edwin Flood, Special Agent
United States Customs Service